Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
David P. EVANS, et al., Plaintiffs,
v.
J. Brian ATWOOD, et al., Defendants.
No. CIV.A. 96-2746(RMU).

Sept. 29, 1999.

Raymond Charles Fay, Laura C. Fentonmiller, Bell, Boyd & Lloyd, Washington, D.C., Co-Counsel for the plaintiffs, Mr. David P. Evans et al.
Burton D. Fretz, Washington, D.C., Co-counsel for the plaintiffs, Mr. David P. Evans et al.
Rudolph Contreras, Assistant United States Attorney, Washington, D.C., Counsel for the Defendants, United States Agency for International Development et al.

MEMORANDUM OPINION

Denying the Defendants' Motion for Reconsideration of Magistrate Judge's August 6, 1999 Decision Permitting Deposition of Carl Sosebee

URBINA, District J.

I. INTRODUCTION

*1 This case is a class action stating a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 621-634. The plaintiffs, a certified class of former Foreign Service employees, claim that the defendants-the United States Agency for International Development ("USAID" or "the agency") and J. Brian Atwood, the USAID's Administrator [FN1]- discriminated against them in favor of younger workers when the agency conducted a reduction in force ("RIF") in 1993. By order and opinion dated March 22, 1999, this court dismissed the plaintiffs' disparate-impact claim, holding as a matter of law that the ADEA does not admit of that theory of liability. The court concluded, however, that there existed a material issue of fact as to the plaintiffs' disparate-treatment claim, so that theory of liability survived summary judgment.

FN1. Effective June 30, 1999, Mr. Atwood was succeeded as USAID administrator by J. Brady Anderson.

This case comes before the court on the defendants' motion to reconsider a discovery decision rendered by the Honorable John Michael Facciola, United States Magistrate Judge. On August 6, 1999, Judge Facciola ruled that the plaintiffs are entitled to take the oral deposition of Mr. Carl Sosebee, Agency Counsel for the USAID. The defendants move for reconsideration of that decision pursuant to Local Rule 503 and Fed.R.Civ.P. 72. In the alternative, the defendants ask that if the plaintiffs are permitted to depose Mr. Sosebee, the deposition should be by written rather than oral questions. For the reasons which follow, the court will affirm the decision of Judge Facciola and will deny the defendants' motion.

II. BACKGROUND

Carl Sosebee is an attorney who is employed in the USAID's Office of General Counsel. He is not listed as a counsel of record in this case, but he has been involved with issues related to the challenged RIF. The plaintiffs first served the defendants with a notice of deposition for Mr. Sosebee in December 1997. The plaintiff agreed, however, to postpone the deposition pending this court's review of an order by Judge Facciola concerning the production of documents related to Mr. Sosebee. *See* Mot. for Reconsideration, Ex. 1. In May 1998 the parties agreed to further postpone the deposition until after they submitted and the court resolved their motions for summary judgment. *Id.,* Ex. 3. After the court ruled on those motions, the plaintiffs served defendants with a notice of deposition for Mr. Sosebee to appear on April 21, 1999. The parties agreed to postpone the deposition again, however, pending the defendants' motion before Judge Facciola for a protective order to preclude the deposition of Mr. Sosebee.

The defendants emphasize that Mr. Sosebee rendered confidential legal advice to the USAID during the period leading up to the 1993 RIF. They contend that his deposition would improperly encroach upon his attorney-client relationship with the agency.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Appendix A Page 1 of 5

Case 1:06-mc-00297-RMC   Document 2-8   Filed 07/07/2006   Page 2 of 5

Not Reported in F.Supp.2d                                                                                        Page 2
Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

III. LEGAL STANDARD

A. District Court's Review of a Magistrate Judge's Decision

On review by this court, a United States Magistrate Judge's decisions are entitled to great deference, particularly on discovery issues. That deference is especially appropriate where, as here, the magistrate judge has managed the discovery component of the case from the outset and has developed a thorough knowledge of the facts, law and procedural history of the case. See *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J.1997). The district court will set aside a magistrate judge's decision on a nondispositive issue only if it is "clearly erroneous or contrary to law." See *Boca Investerings Partnership v. United States*, 31 F.Supp.2d 9, 11 (D.D.C.1998); Fed.R.Civ.P. 72(a); Local Rule 503(c); 28 U.S.C. § 636(b)(1)(A). This standard of review requires this court to affirm the magistrate judge's determination on a nondispositive issue unless "on the entire evidence" the district court "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Arakelian v. National Western Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C.1989). This standard has been equated with an abuse-of-discretion standard. See *Doe v. Marsh*, 899 F.Supp. 933, 934 (S.D.N.Y.1995); 12 Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 3069.

B. Attorney-Client Privilege and the Deposition of an Adversary's Attorney

*2 Under the Federal Rules of Civil Procedure, parties are broadly entitled to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980), applies to agency or "in-house" counsel just as it would to any other attorney. See *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1974); *Mead Data Central v. United States Air Force*, 566 F.2d 242, 253.(D.C.Cir.1977). When consulting with agency counsel, the "Government is dealing with its attorneys as would any other private party seeking advice to protect personal interests and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States Gas Corp.*, 617 F.2d at 863. See. e.g., *Direct Response Consulting Service v. IRS*, 1995 WL 623282 (D.D.C.1982).

Nothing in Federal Rule of Civil Procedure 30(c) exempts a party's attorney from being subject to a deposition. See *Dowd v. Calabrese*, 101 F.R.D. 427, 439 (D.C.Cir.1984). Discovery of opposing counsel may often be improper, however, because "[d]iscovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); see also *Roznitsky v. Schwartz Cobb & Scheinert*, 1999 WL 187074, *2 (S.D.N.Y.1999) ("We start with the general proposition that attorney depositions are disfavored"). The rationale for this presumption against attorney depositions is that depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case. See *Roznitsky*, 1999 WL 187074 at *2. Accordingly, a party seeking to depose its adversary's counsel must demonstrate the propriety of and need for such a deposition. See *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D.Kan.1996). In determining whether to permit a party to depose an adversary's attorney, the federal courts typically consider whether the record shows that (1) no other means exist to obtain the information [FN2]; (2) the information sought is relevant and nonprivileged [FN3]; and (3) the information is crucial to the preparation of the case.[FN4] See *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986); *Curiale v. Tiber Holding Corp.*, 1997 WL 786446 (E.D.Pa.1997); *M & R Amusements Corp.*, 142 F.R.D. 304, 305 (N.D.Ill.1992).

FN2. See *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 86 (M.D.N.C.1987).

FN3. See *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 51 (1st Cir.1987) (information to be elicited in deposition of attorney should be relevant to major issue in case); *West Peninsular Title Co. v. Palm Beach Cty.*, 132 F.R.D. 301, 302 (S.D.Fla.1990) (same).

FN4. Cf. *Johnson Dev. Group v. Carpenters Local*, 130 F.R.D. 348, 352 (D.N.J.1990)

IV. DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

The defendants argue that Mr. Sosebee's deposition is unnecessary and would violate the attorney-client privilege. For the reasons which follow, the court concludes that the Magistrate Judge adequately considered the privilege issue and properly denied the defendants' motion for a protective order.

*3 The defendants contend that the plaintiffs seek Mr. Sosebee's deposition "for no purpose other than to determine what legal advice was requested of him and what legal advice he gave." See Mot. for Recon. at 5. Mr. Sosebee, the defendants claim, was "very involved in the early stages of the defense of this litigation." *Id.* at 8 (citing *Dowd v. Calabrese*, 101 F.R.D. 427, 439-40 (D.D.C.1984) (denying motion to compel deposition of defendants' attorney, who was involved in preliminary stages of case but had not appeared on behalf of defendants since suit was filed, because any testimony he might give would be either privileged or irrelevant)). Therefore, the defendants assert, subjecting Mr. Sosebee to deposition will discourage agencies from seeking legal advice from internal counsel; the result will be either that the agency will make less informed decisions or that it will turn to outside counsel at a higher cost to the taxpayer.FN5

> FN5. It is not clear how deposition of agency counsel such as Mr. Sosebee would cause agencies to turn to outside counsel. The defendants correctly maintain that the privilege/deposition analysis is the same for agency counsel as for outside counsel, and they accurately state that the Magistrate Judge holds the same view, "Under Magistrate Judge Facciola's analysis it would make no difference if the advice sought would be from inside or outside counsel." *See* Mot. for Recon. at 9 n. 4. Thus under the defendants' own reading of precedent and Judge Facciola's analysis, an agency would not have an incentive to eschew in-house counsel in favor of outside counsel.

In addition to the fear that deposing opposing counsel could chill attorney-client communication, *see Shelton*, 805 F.2d at 1327, there are several other considerations behind the courts' reluctance to allow parties to depose opposing counsel. The court finds, however, that these other considerations have little force in the context of the instant case. For instance, one concern is that "the time involved in preparing for and undergoing such depositions will disrupt counsels' preparation of parties' cases and thus decrease the overall quality of representation." *Kaiser v. Mutual Life Ins. Co. of N.Y.*, 161 F.R.D. 378, 381 (S.D.Ind.1994). This concern is not substantially implicated here, because Mr. Sosebee is not counsel of record and there is nothing to suggest he currently plays a major role in the agency's defense of this action. Another concern is that "such depositions may lead to the disqualification of counsel who may be called as witnesses." *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D.Ill.1987). This concern, too, has little force in the context of this case, as Mr. Sosebee is not counsel and so cannot be disqualified.

These concerns aside, the defendants contend that none of the agency's decisionmakers has thus far testified that he took any actions based on the advice of Mr. Sosebee. Therefore, the defendants argue, there is no compelling need for Mr. Sosebee's deposition and the court should not risk divulging confidential information which Mr. Sosebee obtained solely in his role as an agency attorney providing legal advice to his client. *See* Mot. for Recon. at 8, 13. The defendants seem to contradict that statement, however, noting Mr. Sosebee's "role in providing legal advice *in support of decision-making* during the RIF ...." *Id.* at 16. In any event, even if no USAID official testified that they relied on Mr. Sosebee's advice with regard to the RIF, the plaintiffs have submitted documentation-discussed *infra*-suggesting that decisionmakers did rely on his advice.

*4 The Magistrate Judge's opinion demonstrates an awareness and consideration of the aforementioned factors for determining whether to permit deposition of an adversary's attorney. The Magistrate properly began his analysis by recognizing that depositions of an adversary's counsel are generally discouraged "if it is not essential and the information could be gained in another manner." *See* Memorandum Order of the Honorable John Michael Facciola dated August 6, 1999 ("Magistrate Order") at 2. In concluding that the deposition of Mr. Sosebee was "absolutely necessary" to the plaintiffs' case, the Magistrate stressed that his determination on that score was based on his familiarity with the details of the case and the documents exchanged by the parties thus far. *See Evans v. Atwood*, 177 F.R.D. 1 (D.D.C.1998) (Magistrate Judge Facciola's decision on applicability of attorney-client and work-product privileges following his review of documents said to be covered by those privileges). Specifically, the Magistrate found that "Sosebee had a crucial role in organizing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and implementing the RIF and his knowledge is at the heart of the controversy regarding the alleged discrimination." *Id.* at 3.

In addition to other evidence in this case, the documents submitted by the plaintiffs in opposition to the instant motion particularly support the conclusion that Mr. Sosebee played an important role in helping the USAID to structure the RIF and to "frame" the RIF to both the RIF'd employees and the public. Electronic-mail correspondence from Mr. Sosebee to agency decisionmakers supports the view that he was an integral part of the agency's preparation of the RIF regulations. For instance, in 1994 and 1995 Mr. Sosebee commented at length on who had authority with regard to the RIF; how precisely to specify the "competitive area" subject to the RIF and what grounds to cite publicly for the RIF. *See* Opp. to Mot. for Recon., Ex. B at 1, Ex. C. Mr. Sosebee also identified portions of draft RIF documents which had vague language and suggested more specific language designed to shield the agency from attack for the manner in which it carried out the RIF or for the nature of those subject to the RIF. *Id.* at 2.

It cannot be said that Mr. Sosebee's testimony is unimportant to the plaintiffs' case because his involvement concerned only "procedural" or "administrative" aspects of the RIF. For example, Mr. Sosebee's correspondence with agency decisionmakers indicates that he was involved in determining "the policy implications of the different ranking criteria" used to rank employees for the RIF. *Id.* at 6. It also appears that he was substantially involved in formulating policy and regulations governing the role of military preferences in the RIF, as well as RIF'd employees' "bumping" or "bump-and-retreat" rights. *Id. See also id.*, Ex. G (Mr. Sosebee's detailed discussion of the circumstances under which career employees whom have reached their maximum "time-in-class" may be granted "limited career extensions" rather than being RIF'd).

*5 Most significant, Mr. Sosebee was involved in the designation of "separate competitive levels for employees in participating [sic] in Agency designated training or developmental programs." *Id.* The court finds that this involvement may be especially relevant to the plaintiffs' theory of the case, because exempting trainees from the RIF or setting up different RIF criteria for trainees might arguably be found to favor younger employees at the expense of older employees. In short, the Magistrate's finding that Mr. Sosebee's testimony could be crucial to the plaintiffs' case is well-founded in the record. Moreover, the same documentation which provides examples of Mr. Sosebee's involvement in the structuring of the RIF, also suggests that Mr. Sosebee's extensive knowledge of the way the RIF was developed may not all be available elsewhere. This court cannot conclude that the Magistrate Judge abused his discretion in finding that Mr. Sosebee's testimony could be quite important to the plaintiffs' case and would not all be available from other sources.

In ruling that the plaintiffs are entitled to hear Mr. Sosebee's well-informed perspective on the structure and intent of the RIF, the Magistrate was mindful of the defendants' legitimate concerns about attorney-client privilege. The Magistrate expressly reserved the defendants' "right to object when a question arises which implicates a privilege." *See* Magistrate Order at 3. The Magistrate correctly noted that a blanket assertion of the attorney-client privilege is inappropriate here, because the court cannot say that the plaintiffs cannot ask Mr. Sosebee *any* questions which are reasonably likely to lead to the discovery of non-privileged admissible evidence.[FN6][FN7] *Id.* at 3-4. He also noted, however, that the defendants are free to invoke the attorney-client or work-product privilege on a question-by-question basis. Indeed, to afford the defendants an expedited hearing on any privilege objection they may interpose at Mr. Sosebee's deposition, the Magistrate noted, "I will be available to rule on any privilege questions which may arise during the deposition." *Id.* at 4.

FN6. For instance, questions pertaining to the substance of communications between Mr. Sosebee and agency officials on matters which are not strictly legal might not be protected by the attorney-client privilege: "[C]ommunications made by and to [an] in-house lawyer with respect to business matters, management decisions or business advice are not protected by the privilege." *Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 11 (D.D.C.1998). "Because an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel." *Id.* at 12.

FN7. For example, the plaintiffs may be entitled to question Mr. Sosebee about

Case 1:06-mc-00297-RMC    Document 2-8    Filed 07/07/2006    Page 5 of 5

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

underlying facts of which he has knowledge, even if those same facts were the subject of privileged communications between him and agency officials. "[T]he protection of the [attorney-client] privilege extends only to communications and not to facts. * * * The [attorney] cannot be compelled to answer the question, 'What did you say or write to the [client]?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his [client]." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); *see also Allen v. McGraw*, 106 F.3d 582, 603 n. 12 (4th Cir.1998).

In short, the court concludes that the Magistrate did not make any "clearly" erroneous findings or commit any error of law in concluding that the plaintiffs had satisfied the criteria for deposition of an attorney.

V. CONCLUSION

For the foregoing reasons, the court concludes that Judge Facciola's August 6, 1999 decision denying the defendants' motion for a protective order and allowing the plaintiffs to take the oral deposition of Mr. Sosebee was not clearly erroneous. Accordingly, the defendants' motion to reconsider that decision will be denied and the plaintiffs will be permitted to take the oral deposition of Mr. Sosebee, subject to the conditions set forth in the Federal Rules of Civil Procedure and this court's Pretrial Scheduling and Procedures Order dated April 13, 1999.

*6 An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 29 day of September, 1999.

ORDER

Denying the Defendants' Motion to Reconsider Judge Facciola's August 6, 1999 Decision

For the reasons set forth in the court's separately and contemporaneously executed Memorandum Opinion,

it is this 28 day of September, 1999,

ORDERED that the defendants' motion to reconsider Magistrate Judge Facciola's decision of August 6, 1999 shall be and hereby is DENIED; and it is

FURTHER ORDERED that the plaintiffs shall be permitted to take the deposition of Mr. Carl Sosebee.

SO ORDERED.

D.D.C.,1999.
Evans v. Atwood
Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:96CV02746 (Docket) (Dec. 12, 1996)

END OF DOCUMENT