Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 1815561 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
CORPORATION FOR PUBLIC BROADCASTING,
and EDUCATIONAL BROADCASTING
CORPORATION Plaintiffs,
v.
AMERICAN AUTOMOBILE CENTENNIAL
COMMISSION, Defendant.
No. 1:97CV01810.

Feb. 2, 1999.

MEMORANDUM OPINION

HOGAN, District J.
*1 Pending before the Court are three motions
concerning various discovery problems that have
arisen in this case. On January 21, 1999, the Court
heard oral argument on these motions. The following
Opinion contains a brief review of the underlying
facts and the Court's rulings on the motions.

This case arises from a dispute about the
underwriting and production of a public television
documentary commemorating the centennial of the
automobile industry in the United States. The
plaintiffs are the Corporation for Public Broadcasting
(CPB) and the Educational Broadcasting Corporation
(EBC). The defendant, American Automobile
Centennial Commission (AACC), is a Detroit-based
organization established to promote the centennial. In
August 1995, AACC entered into a written
agreement with CPB in which AACC agreed to
provide $1.5 million to CPB for the production of a
documentary on the American automobile industry.
Under the Agreement, CPB was to select a producer
for the documentary and to ensure that the
documentary was of broadcast quality. CPB selected
EBC as the producer and entered into a contract for
the making of the documentary. The film was to be
broadcast on stations associated with the Public
Broadcasting Service (PBS).

The documentary that resulted from the AACC-CPB
contract-"America on Wheels"-aired in June 1996.
Based on the allegedly negative content of the
documentary, AACC withheld its final installment
payment of $500,000. CPB filed this action alleging

breach of contract. AACC counterclaimed for the $1
million it paid to CPB, alleging that CPB breached its
contract with AACC, and that CPB and EBC
defrauded AACC.

Various disputes have arisen during the course of
discovery, and as a result the parties have filed
several motions. These motions are considered in
turn.

1. Defendant's Motion for a Protective Order
Pursuant to Fed.R.Civ.P. 26(c)

Plaintiffs seek the depositions of Susan Kornfield,
David Shand and Timothy Damschroder, the three
attorneys who handled the contract negotiations on
behalf of defendant AACC. The basis for the
depositions requested by plaintiffs is defendant's
theory that an oral contract exists separate and apart
from the written agreement entered into by the
parties. See AACC Answer and Counterclaim at ¶
27. Defendant alleges that plaintiffs breached this
oral agreement by producing a noncelebratory
documentary. Plaintiffs seek the depositions of
AACC attorneys so as to obtain information
regarding the terms of the alleged oral contract.
Defendant has moved for a protective order barring
the attorney depositions. See Fed.R.Civ.P. 26(c);
Shelton v. American Motors Corp., 805 F.2d 1323,
1327 (8th Cir.1986); Boughton v. Cotter Corp., 65
F.3d 823, 830 (10th Cir.1995).

Depositions of opposing counsel are disfavored. See
N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117
F.R.D. 83, 84-85 (M.D.N.C.1987). Such depositions
are allowed only if the deposing party has met the
following requirements: "(1) no other means exist to
obtain the information than to depose opposing
counsel ...; (2) the information sought is relevant and
nonprivileged; and (3) the information is crucial to
the preparation of the case." Shelton, 805 F.2d at
1327

*2 In this case, the existence of an oral contract is at
the heart of defendant's counterclaim. Information
pertaining to this contract is therefore crucial to the
preparation of plaintiff's case. Defendant has
represented, however, that the alleged oral contract
was negotiated between AACC and CPB principals,
and not their counsel. Furthermore, AACC has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1815561 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

represented that it does not intend to call any of the attorneys as witnesses. As a result, and given the presumption against attorney depositions, the Court will grant defendant's motion for a Rule 26(c) protective order. That order is subject to the condition that AACC's attorneys are not called to testify. Should the defendant require their testimony, the Court will at that time lift the protective order and grant plaintiffs' request to depose the attorneys.

### 2. Plaintiffs' Motion to Compel Defendant to Identify Documents Withheld From Production and to Produce Documents Subject to the Waiver of the Attorney-Client Privilege

Plaintiffs' second motion seeks to exploit an alleged waiver of the attorney-client privilege by the defendant. On August 28, 1998, defendant responded to plaintiffs' discovery request. As part of that response, defendant inadvertently included a letter from Susan Kornfield, attorney for AACC, to Jeffrey Smith, AACC's President. In the letter, Kornfield described CPB's policy on editorial control, and advised Smith that a recent letter from Smith to PBS "is likely to be perceived as being beyond the boundaries of PBS guidelines [on editorial control]." Kornfield letter at 2. Plaintiffs argue that this was a privileged communication and that defendant has therefore waived the privilege with respect to any information that relates to the funding agreement. *See In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989) ( "Although the attorney client privilege is of ancient lineage and continuing importance, the confidentiality of the privilege must be jealously guarded by the holder of the privilege lest it be waived.").

Plaintiffs are correct that the inadvertently disclosed letter affects a waiver of the privilege. *Mergentime Corporation v. WMATA,* 761 F.Supp. 1, 2 (D.D.C.1991) (inadvertent disclosure of privileged communication waives privilege). However, this waiver is narrowly limited to the scope of the privileged communication. *See In re UMW,* 159 F.R.D. 307, 310 (D.D.C.1994) (the waiver is to be "narrowly construed and limited to those other documents addressing the same specific subject matter as the documents already produced."). Here, the disclosed portions of the letter concern the nature of public television policies on editorial control. As a result, AACC and its counsel need produce only those documents that concern CPB, EBC or PBS' policies on editorial control. Any attorney-client communications outside the scope of that subject

remain privileged and are not subject to disclosure.

In order to facilitate discovery and the production of privileged documents subject to the waiver, the Court further orders that both sides assemble privilege logs pursuant to Fed.R.Civ.P. 26(b)(5).

### 3. Defendant's Emergency Motion For Sanctions, Adjournment of the Scheduling Order, and A Pretrial Conference Pursuant to Federal Rules of Civil Procedure 26(g) & 37(d)

*3 Discovery in this case began in March 1998. Defendant requested all material relevant to "America on Wheels," including all videotape footage used by the producers of the documentary. Discovery was set to close November 13, 1998. In early November 1998, plaintiffs discovered 347 videotapes in a subbasement of a PBS station in New York. These tapes were within the scope of defendant's discovery request, and plaintiffs had previously informed defendant that the tapes were destroyed. The tapes contain raw footage accumulated in the course of producing "America on Wheels." According to the affidavit of EBC's Associate General Counsel Joshua Nathan, the tapes were discovered because of a move of buildings and a project to create a tape archive.

Based on this dilatory compliance with defendant's discovery request, defendant seeks a potpourri of additional relief. Because the Court does not find bad faith in the actions of plaintiffs' counsel or their clients, and in the interest of fairness and expediency, the Court will order the following:

1. All videotapes responsive to defendant's discovery request will be promptly delivered to defendant for review in the standard VHS format;

2. Upon a showing of good cause, discovery will be extended for two purposes only: (1) to allow defendant additional time to review the videotapes; and (2) to allow either party to take additional depositions relevant to the videotapes.

An Order will accompany this Memorandum Opinion.

D.D.C.,1999.
Corporation for Public Broadcasting, Educational Broadcasting Corporation v. American Automobile Centennial Commission
Not Reported in F.Supp.2d, 1999 WL 1815561

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1815561 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

(D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:97cv01810 (Docket) (Aug. 11, 1997)

END OF DOCUMENT

Appendix _C_ Page _3_ of _3_

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.