IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| APPLIED MEDICAL RESOURCES CORP., | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Misc. No. 1:06MS00297 |
| v. | ) ) | Hon. Rosemary Collyer |
| GAYA LIMITED, | ) ) | |
| Defendant/Counter-Plaintiff. | ) ) ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA OR,
IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Tim Brackett submits this Reply Brief in support of his Motion To Quash Subpoena, Or

In The Alternative, For A Protective Order ("Motion to Quash").

**INTRODUCTION**

In his moving papers, Mr. Brackett showed that his deposition subpoena should be

quashed because: (1) depositions of opposing counsel are disfavored because they disrupt the

attorney-client relationship and impede litigation; (2) Applied has not asserted any claims or

defenses to which such discovery is relevant; (3) the information Applied purportedly seeks is

publicly available and has already been produced in this litigation; and (4) courts do not allow

depositions of opposing counsel to obtain evidence relevant only to un-pleaded claims or

defenses.

In response, Applied argues that a deposition is warranted because: (1) Mr. Brackett

made "incorrect" representations to the PTO about prior art references that allegedly impact

Applied's ability to contest the '932 patent's validity; (2) Mr. Brackett is not "opposing counsel"

because, while he is a partner in the firm representing Gaya in this case (Nixon Peabody LLP),

**RECEIVED**

he has not entered an appearance in the litigation; (3) there are no other means to obtain the

JUL 1 4 2006

10028279.1
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

information Applied seeks; and (4) Applied seeks only non-privileged information concerning Mr. Brackett's discussions with the PTO.

Applied's arguments, which are largely premised upon slogans strung together from factually inapposite cases, lack merit. Applied has not alleged inequitable conduct in its case. Without any such allegations, Mr. Brackett's characterizations of prior art provide no basis for deposing him. Applied already has everything it needs to make its inaccuracy argument – namely, the file wrapper and the relevant pieces of alleged prior art. No case permits an alleged infringer to depose patent prosecution counsel to debate the "accuracy" of arguments concerning prior art made to the PTO during prosecution.

Applied's admitted real purpose in seeking the deposition is to fish for information relevant only to an un-pleaded and unfounded inequitable conduct defense. Because the case law uniformly prohibits such depositions, the Motion to Quash should be granted.[1]

### ARGUMENT

**I.    APPLIED HAS NOT PLEADED INEQUITABLE CONDUCT OR ANY OTHER CLAIM OR DEFENSE THAT WARRANTS AN ATTORNEY DEPOSITION**

Unless an accused infringer has alleged inequitable conduct or some other claim or defense involving attorney misconduct during patent prosecution, there is no basis for deposing patent prosecution counsel. Although Applied asserts that there is no rule that "patent prosecution counsel cannot be deposed unless inequitable conduct has been alleged, (Opp. at 10), it ignores the cases cited by Gaya in its moving papers in which courts have permitted

---

[1]    Gaya has already produced all non-privileged documents responsive to Applied's 30(b)(6) Notice to Nixon Peabody LLP, subject to the objections set forth in Gaya's letter to Applied dated May 31, 2006 (Attached as Exhibit F to Mills June 26, 2006 Declaration filed in support of Gaya's moving papers). In addition, Mr. Brackett and Nixon Peabody object to Request Number 6 for Documents and Things as being overly broad, vague, irrelevant to any claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence.

- 3 -

depositions of patent prosecution counsel *only* when the alleged infringer asserted a claim or

defense alleging attorney misconduct. *See, e.g., Genal Strap, Inc. v. Dar*, 2006 U.S. Dist. LEXIS

11474, *6-10 (E.D.N.Y. Mar. 3, 2006); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F.

Supp. 2d 770, 772, 774 n.3 (N.D. Ill. 2005); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp.

2d 340, 345 (S.D.N.Y. 2002); *Environ Prods, Inc. v. Total Containment, Inc.*, 1996 U.S. Dist.

LEXIS 12336, *12-14 (E.D. Pa. Aug. 22, 1996).

In addition to these cases – which Applied has not, and cannot, distinguish – Applied's

assertion is further debunked by *ResQNet.com, Inc. v. Lansa, Inc.*, 2004 U.S. Dist. LEXIS 13579

(S.D.N.Y. July 23, 2004), in which the court refused to permit the deposition of the prosecuting

attorney based on the absence of any pleaded inequitable claim or defense. *Id.* at *8-15.

*ResQNet* is exactly on point and demonstrates that an alleged infringer cannot depose

prosecution counsel about his or her mental impressions and communications with the PTO

where these issues are relevant only to un-pleaded claims or affirmative defenses. *Id.*

*ResQNet's* holding also reflects the well-settled proposition in this Court and elsewhere

that the information sought from an attorney deposition must be relevant to a *major* issue in the

case. *See, e.g., MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 51 (1st Cir. 1987); *Evans*,

1999 U.S. Dist. LEXIS 17545, *8 n.3; *West Peninsular Title Co. v. Palm Beach City*, 132 F.R.D.

301, 303 (S.D. Fla. 1990). Here, because Applied has not pleaded any claim or defense

involving attorney misconduct, the deposition Applied seeks is not relevant to any issue in the

case, much less a "major" one.

Most telling, however, is the fact that Applied *has cited no cases* permitting a deposition

of the attorney who prosecuted a patent in suit where attorney misconduct had not been expressly

alleged as part of a pleaded claim or affirmative defense. Applied's reliance on case law outside

the patent context is unavailing. For example, *Amicus Communications, L.P. v. Hewlett-Packard Co.*, 1999 U.S. Dist. LEXIS 20901 (D.D.C. Dec. 3, 1999), is not on point because that case concerned a trademark dispute where "[b]oth the Complaint and the Counterclaims . . . interpose[d] allegations that put events during the prosecution of the [trademark] registration directly at issue" in the litigation. *Id.* at *2. By contrast, this is a patent infringement dispute, and Applied has not pleaded inequitable conduct or any other defense that would put the prosecuting attorney's conduct or representations at issue.

The other cases Applied cites are even less relevant. *See, e.g.*, *United States v. Philip Morris*, 209 F.R.D. 13, 17 (D.D.C. 2002) (permitting depositions of in-house counsel in tobacco litigation where counsel held executive, non-legal positions at Phillip Morris and R.J. Reynolds for years prior to litigation); *Jennings v. Family Management*, 201 F.R.D. 272, 276-77 (D.D.C. 2001) (holding opposing counsel properly deposed about elderly client's mental fitness in fraud dispute with healthcare provider); *Evans v. Atwood*, 96-2746, 1999 U.S. Dist. LEXIS 17545, *4-15 (D.D.C. Sept. 29, 1999) (permitting deposition in an age discrimination lawsuit where in-house government attorney was responsible for implementing disputed policy central to case). None of these cases supports the proposition that patent prosecution counsel may be deposed about his "incorrect" characterization of prior art to the PTO.

## II.    APPLIED IS NOT PERMITTED TO FISH FOR INFORMATION TO SUPPORT ITS UNFOUNDED INSINUATIONS OF INEQUITABLE CONDUCT

Prior to the filing of this Motion to Quash, and before Applied adopted its present litigation position, Applied admitted that the real reason it seeks to depose Mr. Brackett is to determine whether it can obtain sufficient evidence to amend its pleadings and assert an inequitable conduct defense:

> Applied has not at this time alleged that [Brackett's] representations [to the PTO] were made with culpable intent to mislead such that they amount to inequitable conduct, but certainly reserves the right to do so. Mr. Brackett may have an entirely innocent explanation for the inaccuracies of the representations regarding the scope of the prior art or he may have no explanation at all, which would justify an inference of intent to mislead.

Exhibit I to Mills June 26, 2006 Declaration (June 20, 2006 letter from Applied's counsel to Gaya's counsel) at 2.

This admission confirms that the true purpose of the deposition is an impermissible fishing expedition. *See Kaplan v. CALPERS,* 1998 U.S. Dist. LEXIS 14040, *19 (C.D. Cal. Sept. 8, 1998) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under [the] federal rules of discovery."), *aff'd,* 221 F.3d 1348 (9th Cir. 2000); *accord Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request. . . ."). The new litigation position that Applied has now adopted in opposing Mr. Brackett's Motion – that a deposition is warranted to probe the "accuracy" of Mr. Brackett's characterizations of prior art – is not a serious argument and merely a smoke screen masking its real, previously-stated intentions.

## III.    MR. BRACKETT'S VIEW OF PRIOR ART IS NOT RELEVANT TO APPLIED'S INVALIDITY DEFENSE

Applied contends that the information it seeks is relevant to its invalidity defense because Mr. Brackett's alleged "incorrect" characterization of prior art relates to the burden Applied must overcome in proving invalidity. Opp. at 9. Specifically, Applied contends that "the presumption

of validity would be more easily overcome if it turns out that Mr. Brackett's representations regarding the prior art were inaccurate." *Id.* Applied cites no case law supporting this novel argument.

The only accurate statement of the law that Applied makes here is that issued patents are presumed valid. *See* 35 U.S.C. § 282; *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). Applied, however, omits the actual standard for demonstrating invalidity. To attack patent validity, Applied must show that the alleged prior art either anticipates or renders obvious the claims of the patent at issue. 35 U.S.C. § 282. Anticipation results when all limitations of a claimed invention are contained in a single prior art reference. *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

To illustrate obviousness, Applied must prove that the differences between the claims of the '932 patent and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a); *Robotic Vision Sys. v. View Eng'g, Inc.*, 189 F.3d 1370, 1376-77 (Fed. Cir. 1999). Applied must also show that a person having ordinary skill in the discipline would be motivated to combine the prior art references and create all claims of the challenged patent. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1351-52 (Fed. Cir. 1998).

What patent prosecution counsel thought or said about prior art cited to the PTO is simply not relevant to a validity defense. A patent examiner's job is to review all prior art disclosed during patent prosecution, not simply to adopt the prosecuting counsel's characterization of prior art. *See* M.P.E.P. § 904.03, attached hereto as Exhibit A. In this case, multiple examiners reviewed the '932 patent application. *See* Exhibit A to Mills June 26, 2006

Declaration and Exhibits B and C hereto. Further, there is no argument the Mr. Brackett did not disclose relevant prior art.

Parties disputing validity use experts skilled in the relevant art to determine whether prior art invalidates a patent. Based on such expert testimony, the court or a jury decides whether a patent is valid. So long as Mr. Brackett brought all relevant prior art to the attention of the examiner, which he plainly did here, what Mr. Brackett thinks or how he characterized the prior art has no bearing on whether the '932 patent is valid. If Applied deposed Mr. Brackett on this topic, they would simply disagree about the scope of the prior art references and engage in a meaningless debate among lawyers, none of whom are skilled in the relevant art and could provide competent testimony. Thus, nothing Mr. Brackett can say is the least bit relevant to an invalidity defense.

Of course, as revealed in Mr. Jenning's June 20, 2006 letter, Applied's true goal in deposing Mr. Brackett is to uncover his supposed deceptive intent in characterizing prior art so that Applied can then assert an inequitable conduct defense. However, Mr. Brackett's "incorrect" characterization of prior art is not behavior that supports such a defense. Inequitable conduct occurs when prosecution counsel deliberately withholds prior art references, or intentionally misrepresents material information, not when counsel describes a prototype or prior art in a way disputed by an alleged infringer. *See, e.g., Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1350-1353 (Fed. Cir. 2005). Consequently, even if Mr. Brackett's view of the prior art is "incorrect," this will not meet the high standard required to support an inequitable conduct claim against Gaya. *See Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1128-29 (Fed. Cir. 2006).

- 8 -

### A.  What Mr. Brackett Thought About The Prior Art And The Breadth of The '932 Patent Is Not Relevant Claim Construction

Applied also argues that Mr. Brackett's deposition is relevant because it bears "directly on the potential interpretation of the asserted patent and how the invention was embodied in the demonstrated prototype." Opp. at 10. This argument completely misconstrues applicable law on claim construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* (internal quotation omitted). In construing a patent's claims, courts may consider many factors, such as the "ordinary and customary meaning" of the words used in a claim. *Id.* Courts may also review the prosecution history when completing claim construction. *Id.* at 1317.

This does not mean, however, that an alleged infringer may depose prosecution counsel and obtain his or her view on prior art, and that the counsel's view is somehow relevant to claim construction. *Id.*; *see also Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) (holding testimony of an inventor and his attorney concerning claim construction is entitled to little or no consideration and that the "testimony of an attorney amounts to no more than legal opinion [which is] precisely the process of construction that the court must undertake") (internal quotation omitted). Applied's argument that Mr. Brackett's understanding of prior art is relevant to interpreting the claims of the '932 patent is completely meritless.

### B.  Deposing Mr. Brackett Risks Invading The Attorney-Client And Work Product Privileges

Tim Brackett was the attorney who prosecuted the '932 patent. During the prosecution of the '932 patent, there was an ongoing dispute between Gaya and Applied concerning the parties'

Secrecy Agreement and Patent License and Option Agreement, and the Gelport device that Gaya

alleges infringes the '932 patent. Thus, unlike the cases cited by Applied in its Opposition, here

there was much more than a "hypothetical" possibility of litigation between the parties

concerning the pending patent application. This fact distinguishes this case from others where

courts were less concerned with privilege issues, since here the '932 patent was prosecuted under

the concrete threat of impending litigation on multiple fronts. Mr. Brackett may properly assert

work product protection under these circumstances. *See, e.g., Ambrose v. Steelcase, Inc.*, 2003

U.S. Dist. LEXIS 26036, *7-11 (W.D. Mich. May 9, 2003) (patent holder may assert work

product immunity to protect materials generated during patent prosecution that were also

prepared in anticipation of litigation); *accord, Dowd v. Calabrese*, 101 F.R.D. 427, 439-40

(D.D.C. 1984) (denying motion to compel deposition of defendant's attorney who was involved

at early stage of case, but who had not entered an appearance, because the testimony he would

give would be either irrelevant or privileged).

## CONCLUSION

Applied has failed to overcome the presumption against deposing opposing counsel because it has not pleaded any claims or affirmative defenses that would render Mr. Brackett's mental impressions or thoughts relevant to this action. Rather, Applied's own correspondence with Gaya's counsel reveals its true purpose in seeking Mr. Brackett's deposition is to fish for evidence of inequitable conduct so that it can amend its pleadings. Applied's actions demonstrate why attorney depositions are disfavored. They also show that the sole result of deposing Mr. Brackett would be to disrupt his attorney-client relationship with Gaya and unnecessarily complicate this litigation. Applied's subpoena to Mr. Brackett should be quashed.

Dated: July 14, 2006

Respectfully submitted,

Laurin H. Mills ((#428768)
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8515 (phone)
(202) 585-8080 (facsimile)
lmills@nixonpeabody.com

*Attorney for Movant Timothy Brackett*

10028279.1

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 78.1, we respectfully request oral argument on this motion

# Exhibit A

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents >

Go to **MPEP - Table of Contents**

**browse before**

# 904.03 Conducting the Search - 900 Prior Art, Classification, >and< Search

### 904.03 Conducting the Search

It is a prerequisite to a speedy and just determination of the issues involved in the examination of an application that a careful and comprehensive search, commensurate with the limitations appearing in the most detailed claims in the case, be made in preparing the first action on the merits so that the second action on the merits can be made final or the application allowed with no further searching other than to update the original search. It is normally not enough that references be selected to meet only the terms of the claims alone, especially if only broad claims are presented; but the search should, insofar as possible, also cover all subject matter which the examiner reasonably anticipates might be incorporated into applicant's amendment. Applicants can facilitate a complete search by including, at the time of filing, claims varying from the broadest to which they believe they are entitled to the most detailed that they would be willing to accept.

In doing a complete search, the examiner should find and cite references that, while not needed for treating the claims, would be useful for forestalling the presentation of claims to other subject matter regarded by applicant as his or her invention, by showing that this other subject matter is old or obvious.

In selecting the references to be cited, the examiner should carefully compare the references with one another and with the applicant's *disclosure* to avoid the citation of an unnecessary number. The examiner is not called upon to cite *all* references that may be available, but only the "best." ( **37 CFR 1.104(c)**.) Multiplying references, any one of which is as good as, but no better than, the others, adds to the burden and cost of prosecution and should therefore be avoided. The examiner must fully consider all the prior art references cited in the application, including those cited by the applicant in a properly submitted Information Disclosure Statement.

The best reference should always be the one used. Sometimes the best reference will have a publication date less than a year prior to the application filing date, hence it will be open to being overcome under **37 CFR 1.131**. In these cases, if a second reference exists which cannot be so overcome and which, though inferior, is an adequate basis for rejection, the claims should be *additionally* rejected thereon.

In all references considered, including nonpatent, foreign patents, and domestic patents, the examiner should study the specification or description sufficiently to determine the full value of the reference disclosure relative to the claimed or claimable subject matter.

**browse after**

KEY: ⟨⟩=online business system  $ =fees 📄 =forms 🔖 =help ⚖ =laws/regulations 📖=definition (glossary)

*The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the **webmaster@uspto.gov**. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

---

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 12/07/2005 04:34:01

Go to **MPEP - Table of Contents**

# Exhibit B



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/936,841 | 03/01/2002 | Martin Caldwell | 1890-0020 | 1503 |

22204      7590      10/03/2003

NIXON PEABODY, LLP
8180 GREENSBORO DRIVE
SUITE 800
MCLEAN, VA  22102

| EXAMINER |
|---|
| THALER, MICHAEL H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

DATE MAILED: 10/03/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

OCT 0 8 2003

10/08/03  DOCKETED  By  *CAP*
Nixon Peabody, LLP

PTO-90C (Rev. 10/03)

ATTORNEYS EYES ONLY
GAYA 1444

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/936,841 | CALDWELL ET AL. |
| | Examiner | Art Unit | |
| | Michael Thaler | 3731 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .

2a) ☐ This action is **FINAL**.         2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
   closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-12</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1-12</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage
        application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

| | | |
|---|---|---|
| 1) ☐ Notice of References Cited (PTO-892) | 4) ☐ Interview Summary (PTO-413) Paper No(s). _____ . | |
| 2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) | 5) ☐ Notice of Informal Patent Application (PTO-152) | |
| 3) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) <u>2, 11-12</u> . | 6) ☐ Other: | |

U.S. Patent and Trademark Office
PTOL-326 (Rev. 04-01)                    Office Action Summary                    Part of Paper No. 13

ATTORNEYS EYES ONLY
GAYA 1445

Application/Control Number: 09/936,841                    Page 1

Art Unit: 3731

The drawings are objected to under 37 CFR 1.83(a). The
drawings must show every feature of the invention specified in the
claims. Therefore, the external proximal valve defined in claims
9, 11 and 12 must be shown or the feature(s) canceled from the
claim(s). No new matter should be entered. A proposed drawing
correction or corrected drawings are required in reply to the
Office action to avoid abandonment of the application. The
objection to the drawings will not be held in abeyance.

Claims 3-5 are rejected under 35 U.S.C. 112, first paragraph,
as containing subject matter which was not described in the
specification in such a way as to enable one skilled in the art to
which it pertains, or with which it is most nearly connected, to
make and/or use the invention. The description of the valve 8
shown in figures 2 and 3 (page 5, lines 5-19 of the specification)
is so confusing and unclear that it would not enable one skilled in
the art to make and/or use the invention. For example, it is
unclear exactly what the "actuates" are. Further, the shape and
location of the "actuates" is unclear. It is unclear where the "a
distal tube" (page 5, lines 8-9) is.

Claims 3-5, 10, 11 and 12 are rejected under 35 U.S.C. 112,
second paragraph, as being indefinite for failing to particularly
point out and distinctly claim the subject matter which applicant

ATTORNEYS EYES ONLY
GAYA 1446

Application/Control Number: 09/936,841                    Page 2

Art Unit: 3731

regards as the invention. The scope of claims 3-5 is unclear for

the reasons set forth in the paragraph above. Claim 10 contradicts

claim 9 (from which it depends) since the valve may not be both an

external proximal valve and also an internal distal valve. In

claim 11, line 9, "connectable" should be "connected" since the

sleeve is not removable from the body-cavity engagement means and

the fixing means.

The following is a quotation of 35 U.S.C. 103(a) which forms

the basis for all obviousness rejections set forth in this Office

action:

> (a) A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the
> differences between the subject matter sought to be patented and the prior
> art are such that the subject matter as a whole would have been obvious at
> the time the invention was made to a person having ordinary skill in the
> art to which said subject matter pertains. Patentability shall not be
> negatived by the manner in which the invention was made.

Claims 1-12 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Golub et al. (5,514,133). Golub et al. disclose

body cavity engagement means (distal ring 14), fixing means

(proximal ring 12), sleeve 16 having an associated connector ring

56 for receiving medical instruments (passing within the apparatus

10) and sealing means 62, 64. The Golub et al. specification fails

to specifically indicate that the sealing means 62, 64 mould about

a substantial portion of a surgeon's hand or surgical instrument.

ATTORNEYS EYES ONLY
GAYA 1447

Application/Control Number: 09/936,841                    Page 3

Art Unit: 3731

However, it would have been obvious that this occurs to some extent
since figure 5 shows the flap valve seals tightly engaging the
surgeon's arm and since flap valve seals typically are very
flexible. Alternatively, it would have been obvious that the
"envelope seals" described in col. 5, lines 8-10 mould about a
substantial portion of a surgeon's hand or surgical instrument
since envelope seals, by definition, envelope (or mould about) the
object passing within them. Note that the sleeve 16 is inherently
adjustable by the positioning of the proximal ring 12 since, once
the adjustment members 24 are anchored to the proximal ring (as
indicated in col. 5, lines 29-320), pulling the proximal ring
upwards will cause the sleeve 16 to also be pulled upwards to even
further tighten the seal between the incision and sleeve.
Alternatively, rotating the proximal ring will inherently twist
sleeve 16 and thereby shorten it. Thus, Golub et al. discloses the
adjustment means for adjusting or modifying the length of the
sleeve defined in claims 7 and 12. However, assuming *arguendo* that
Golub et al. fails to disclose adjustment means for adjusting the
length of the sleeve, as defined by 35 U.S.C. 112, sixth paragraph,
since Golub et al. fails to disclose the step of using the device
in this manner, it was well known to rotate a proximal ring of a
surgical port in order to twist and tighten an attached sleeve

ATTORNEYS EYES ONLY
GAYA 1448

Application/Control Number: 09/936,841                    Page 4

Art Unit: 3731

which passes through the incision in order to insure that a good
seal is formed between the incision and the sleeve.  It would have
been obvious to so use the Golub et al. device so that it too would
have this advantage.  As to claim 8, The Golub et al. fails to
disclose that sleeve 16 (bellows 54) is made of elastomer material.
However, it was well known that bellows typically are formed of
elastomer material so that they return to the original shape when
unstressed.  It would have been obvious to form bellows 54 of
elastomer material so that it too would have this advantage.  As to
claim 10, the Golub et al. valve 62, 64 is an internal distal
valve, as broadly claimed since it is internal of the apparatus 10
and distal to proximal member 56.  Alternatively, it was well known
to locate the valve of a surgical port distally within the incision
with the advantage that it insures that no fluid can escape into
the port.  It would have been obvious to so locate the Golub et al.
valve so that it too would have this advantage.

    Any  inquiry  concerning  this  communication  or  earlier
communications from the examiner should be directed to Michael
Thaler whose telephone number is (703) 308-2981.  The examiner can
normally be reached Monday to Friday.

    If  attempts  to  reach  the  examiner  by  telephone  are
unsuccessful, the examiner's supervisor, Michael J. Milano can be

**ATTORNEYS EYES ONLY**
**GAYA 1449**

Application/Control Number: 09/936,841                    Page 5

Art Unit: 3731

reached on (703)308-2496. The fax phone numbers for the

organization where this application or proceeding is assigned are

(703)305-3590 for regular communications and (703)305-3590 for

After Final communications.

Any inquiry of a general nature or relating to the status of

this application or proceeding should be directed to the

receptionist whose telephone number is (703)308-0858.

mht
September 25, 2003

MICHAEL THALER
PRIMARY EXAMINER
ART UNIT 3731

ATTORNEYS EYES ONLY
GAYA 1450

Please type a plus sign (+) inside this box → [+]

PTO/SB/08A (08-00)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449A/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(use as many sheets as necessary)*

| | | | | Complete if Known |
|---|---|---|---|---|
| Application Number | | | | 09/936,841 |
| Filing Date | | | | |
| First Named Inventor | | | | Martin Caldwell |
| Group Art Unit | | | | |
| Examiner Name | | | | |
| Sheet | 1 | of | 1 | Attorney Docket Number | 1890-0020 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | U.S. Patent Document Number | Kind Code² (if known) | Name of Patentee or Applicant of Cited Document | Date of Publication of Cited Document MM-DD-YYYY | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| ✓ | | 1,157,202 | | Bates et al. | 10-19-1915 | |
| | | 5,159,921 | | Hoover | 11-03-1992 | |
| | | 5,213,114 | | Bailey, Jr. | 05-25-1993 | |
| | | 5,366,478 | | Brinkerhoff et al. | 11-22-1994 | |
| | | 5,514,133 | | Golub et al. | 05-07-1996 | |
| | | 5,524,644 | | Crook | 06-11-1996 | |
| | | 5,649,550 | | Crook | 07-22-1997 | |
| | | 5,810,721 | | Mueller et al. | 09-22-1998 | |
| | | 5,906,577 | | Beane et al. | 05-25-1999 | |
| | | 6,033,426 | | Kaji | 03-07-2000 | |
| | | 6,142,935 | | Flom et al. | 11-07-2000 | |
| | | 6,254,534 | B1 | Butler et al. | 07-03-2001 | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Office³ | Number⁴ | Kind Code³ (if known) | Name of Patentee or Applicant of Cited Document | Date of Publication of Cited Document MM-DD-YYYY | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|---|---|
| ✓ | | WO | 95/07056 | A2 | Bonadio et al. | 03-16-1995 | | |
| | | WO | 00/32120 | A1 | Bonadio et al. | 06-08-2000 | | |
| | | WO | 00/35356 | A1 | Bonadio et al. | 06-22-2000 | | |
| | | WO | 01/26559 | A1 | Bonadio et al. | 04-19-2001 | | |
| | | WO | 02/34108 | A2 | Ewers et al. | 05-02-2002 | | |

| Examiner Signature | | Date Considered | 9-25-03 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ Unique citation designation number. ² See attached Kinds of U.S. Patent Documents. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

**ATTORNEYS EYES ONLY**
**GAYA 1451**

PTO/SB/08A (10-01)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449A/PTO | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | | Complete if Known | | | |
| | | Application Number | | 09/936,841 | |
| | | Filing Date | | September 18, 2000 | |
| | | First Named Inventor | | Martin CALDWELL et al. | |
| | | Art Unit | | 3731 | |
| | | Examiner Name | | M. Milano | |
| Sheet | 1 | of | 1 | Attorney Docket Number | 741890-20 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Document Number - Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| /M/ | | US- 6,440,063 B1 | 08-27-2002 | Beane et al. | |
| | | US- 6,077,288 | 06-20-2000 | Shimomura et al. | |
| | | US- 5,640,977 | 06-24-1997 | Leahy et al. | |
| | | US- 6,149,642 | 11-21-2000 | Gerhart et al. | |
| | | US- 5,545,179 | 08-13-1996 | Williamson, IV | |
| | | US- 6,276,661 B1 | 08-21-2001 | Laird | |
| | | US- 3,347,227 | 08-17-1967 | H. W. Harrower | |
| | | US- 2001/0037053A1 | 11-01-2001 | Bonadio et al. | |
| | | US- 6,382,211 B1 | 05-07-2002 | Crook | |
| | | US- 6,033,428 | 03-07-2000 | Sardella | |
| | | US- 6,450,983 B1 | 09-17-2002 | Rambo | |
| | | US- 6,254,533 B1 | 07-03-2001 | Fadem et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] | Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Application of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

## OTHER PRIOR ART – NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Examiner Signature | /M/ | Date Considered | 2-25-03 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

**ATTORNEYS EYES ONLY**
**GAYA 1452**

OIPE
JUN 0 5 2003
PATENT & TRADEMARK

| Substitute for form 1449A/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | | | Application Number | 09/936,841 |
| | | | Filing Date | March 1, 2002 |
| | | | First Named Inventor | Martin CALDWELL |
| | | | Art Unit | 3731 |
| | | | Examiner Name | Michael H. Thaler |
| Sheet | 1 | of | 1 | Attorney Docket Number | 741890-20 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | U.S. Patent Document Number - Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| ✓ | | US-4,984,564 | 01-15-1991 | Yuen | |
| ✓ | | US-5,522,791 | 06-04-1996 | Leyva | |
| ✓ | | US-5,634,937 | 06-03-1997 | Mollenauer et al. | |
| ✓ | | US-5,871,474 | 02-16-1999 | Hermann et al. | |
| | | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Application of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**OTHER PRIOR ART – NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

RECEIVED
JUN 1 0 2003
TECHNOLOGY CENTER R 3700

| Examiner Signature | | Date Considered | 9-25-03 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

NVA266793.1

**ATTORNEYS EYES ONLY**
**GAYA 1453**

# Exhibit C

Attorney Docket No. 1890-0020

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Patent Application of: | ) | |
| Martin CALDWELL et al. | ) | Group Art Unit: 3731 |
| Serial No. 09/936,841 | ) | |
| Filed: September 18, 2000 | ) | Examiner: M. Milano |
| For:  A SURGICAL ACCESS DEVICE | ) | |

CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the
United States Postal Service with sufficient postage as First Class Mail in an
envelope addressed to: Assistant Commissioner of Patents, Washington, D.C.
20231 on April __11__, 2003.

_April Campbell_
April Campbell

## SECOND PRELIMINARY AMENDMENT

Commissioner for Patents
Washington, D.C.  20231

Sir:

Prior to examination on the merits, please preliminarily amend the subject
application as follows:

IN THE CLAIMS:

Please add claims 11 and 12 as follows:

11.  (Amended) A surgical device for use in minimally invasive surgery of
the type using an inflated cavity accessible to a surgeon through an access port,
defined by the device, surrounding an incision in a patient's body, the device
comprising:

body cavity engagement means for insertion into the incision to locate the
device in position including a distal ring;

NVA261133.1

ATTORNEYS EYES ONLY
GAYA 1464

– 2 –                 Application No. 09/936,841
                      Docket No. 1890-0020

fixing means for attaching the device to a patient's skin, said fixing means including a proximal ring;

a sleeve connectable between the body cavity engagement means and the fixing means, said sleeve having an adjustable length that shortens to retract the incision to define the access port; and

a sealing means mounted on at least one of the distal ring and the proximal ring to prevent substantial leakage of gas from the body cavity on inflation when in an operative position and formed to mold about a substantial portion of a surgeon's hand or surgical instrument on insertion in an operating position.

12. (Amended) A surgical device for use in minimally invasive surgery of the type using an inflated cavity accessible to a surgeon through an access port, defined by the device, surrounding an incision in a patient's body, the device comprising:

body cavity engagement means for insertion into the incision to locate the device in position including a distal ring;

fixing means for attaching the device to a patient's skin, said fixing means including a proximal ring;

a sleeve connectable between the body cavity engagement means and the fixing means, said sleeve having a length;

an adjustment means for adjusting the length of said sleeve to retract sides of the incision; and

a sealing means mounted on at least one of the distal ring and the proximal ring to prevent substantial leakage of gas from the body cavity on inflation when in an operative position and formed to mold about a substantial portion of a surgeon's hand or surgical instrument on insertion in an operating position.

NVA261133.1

ATTORNEYS EYES ONLY
GAYA 1465

– 3 –
Application No. 09/936,841
Docket No. 1890-0020

## REMARKS

By this second preliminary amendment, the claims 11 and 12 have been presented in a form consistent with USPTO practice. Claims 1-12 continue to be pending. Prompt examination of the application is respectfully requested.

Respectfully submitted,

Tim L. Brackett, Jr.
Registration No. 36,092

NIXON PEABODY LLP
8180 Greensboro Drive, Suite 800
McLean, Virginia 22102
(703) 770-9300
(703) 770-9400 (Fax)

TLC/JWM

NVA261133.1

ATTORNEYS EYES ONLY
GAYA 1466

– 4 –                     Application No. 09/936,841
                         Docket No. 1890-0020

## Marked-up Version of the Amendments

IN THE CLAIMS:

Please add claims 11 and 12 as follows:

11.  (Amended) A surgical device for use in minimally invasive surgery of the type using an inflated cavity accessible to a surgeon through an access port, defined by the device, surrounding an incision in a patient's body, the device comprising:

body cavity engagement means for insertion into the incision to locate the device in position including a distal ring;

fixing means for attaching the device to a patient's skin, said fixing means including a proximal ring;

a sleeve connectable between the body cavity engagement means and the fixing means, said sleeve having an adjustable length that shortens to retract the incision to define the access port; and

a sealing means mounted on at least one of the distal ring and the proximal ring to prevent substantial leakage of gas from the body cavity on inflation when in an operative position and formed to mold about a substantial portion of a surgeon's hand or surgical instrument on insertion in an operating position.

12.  (Amended) A surgical device for use in minimally invasive surgery of the type using an inflated cavity accessible to a surgeon through an access port, defined by the device, surrounding an incision in a patient's body, the device comprising:

body cavity engagement means for insertion into the incision to locate the device in position including a distal ring;

fixing means for attaching the device to a patient's skin, said fixing means including a proximal ring;

NVA261133.1

ATTORNEYS EYES ONLY
GAYA 1467

– 5 –                    Application No. 09/936,841
                        Docket No. 1890-0020

a sleeve connectable between the body cavity engagement means and the fixing means, said sleeve having a length;

an adjustment means for adjusting the length of said sleeve to retract sides of the incision; and

a sealing means mounted on at least one of the distal ring and the proximal ring to prevent substantial leakage of gas from the body cavity on inflation when in an operative position and formed to mold about a substantial portion of a surgeon's hand or surgical instrument on insertion in an operating position.

ATTORNEYS EYES ONLY
GAYA 1468

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2006, I caused a copy of the foregoing to be

served by electronic mail and U.S. Mail, postage prepaid upon:

Joseph F. Kennings, Esq.
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Suite 1400
Irvine, California  92614

_____
Leslie Paul Machado